MARGARET. DICK AND OTHERS, APPELLANTS *v.* STEPHEN B. BALCH AND OTHERS.

The case was argued by Mr Key, for the appellants; and by Mr Coxe, for the appellees.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

The bill filed in this case is for the foreclosure of a mortgage, dated on the 4th of August 1809, to secure the payment of three promissory notes, given by the mortgagor John Peter, to the mortgagee Thomas B. Beale, the testator of the complainants.

The mortgaged premises were a house and several lots in Georgetown, which the mortgagor afterwards, on the 16th of

April 1810, sold and conveyed to Elizabeth Peter, who then paid the purchase money. The bill is filed in 1821 against John Peter and Elizabeth Peter. Soon after the service of process, Elizabeth Peter departed this life, and the suit was revived against her devisees. These defendants, in their answer, do not admit the mortgage, and require proof of its existence.

The proof offered by the plaintiffs is an office copy of the deed, and the first question in the cause is on the admissibility of this copy.

The law of Maryland is the law of this part of the District of Columbia.

The acts of 1715 and of 1766 require that all conveyances of land shall be enrolled in the records of the same county where the lands, tenements or hereditaments conveyed by such deed or conveyance do lie, or in the provincial court, as the case may be. The courts of Maryland are understood to have decided, that copies of deeds thus enrolled may be given in evidence.

In a case reported, 6 Harris and Johnson 276, the defendant offered in evidence the record of a deed, to the admission of which the plaintiff objected; but the court overruled the objection. A bill of exceptions was taken, and the judgment, which was in favour of the defendant, was carried before the court of appeals. The counsel for the plaintiff in error contended, that as the acts requiring the enrolment of conveyances do not say that a copy of the enrolment shall be evidence, the general principle of law is, that the deed itself, unless shown to have been lost, must be produced.

Chief Justice Buchanan, delivering the opinion of the court, said, this case comes before us on three bills of exceptions. The first presents the question, whether the enrolment of a deed of bargain and sale is competent evidence of title to lands in the trial of an action of ejectment, or whether the original must be produced? The court before whom the cause was tried, decided that it was, and that the original need not be produced; and certainly it is too late, at this day, to question the correctness of that decision. Copies of deeds that are not required to be enrolled, cannot be admitted in evidence; but deeds of bargain and sale are, by the laws of the state, required

to be enrolled, and by the uniform tenor of the decisions of the courts of the state, exemplifications of records of deeds of bargain and sale are as good and competent evidence as the originals themselves.

In the circuit court, the plaintiff offered testimony to account for the absence of the original deed. Objections were made to the reception and sufficiency of this testimony; but as, by the settled law of Maryland, the copy of the deed was admissible without proving the loss of the original, it is unnecessary to examine the validity of these objections.

The original existence of the mortgage being established, we proceed to inquire into the validity of the objections raised to its being still in force, so as to avail the plaintiffs in the circuit court. These objections are,

1st. That it has been released.

2d. That the silence of the said mortgagee, during his whole life, respecting his claim, thus concealing it from Elizabeth Peter for more than eleven years, whereby she and her representatives have lost all possibility of recovering the purchase money from John Peter; has forfeited his right, both in law and equity, to proceed against the mortgaged premises.

The instrument by which, as the defendants in the court below contend, this debt was released, is dated the 27th of April 1820. It was signed and sealed by several of the creditors of the mortgagor, and among others, by Thomas B. Beale the mortgagee.

John Peter, who was engaged extensively in commerce, had sustained heavy losses by fire. Several of his friends and creditors agreed to receive a conveyance of all his remaining property, to be distributed rateably among them, and to advance him a considerable sum of money to set him up again in business. The defendants in error allege, that this agreement was on the condition, that all his creditors should sign a release of his debts, so as to leave his future acquisitions exonerated from their claims; and that some of his creditors refused to sign the release, in consequence of which refusal the whole became inoperative.

The deed conveying his property to a trustee for the use of his creditors, and the instrument of release, were both produced, and appear in the record. The deed of release enumerates

the creditors of John Peter, some of whom have not executed it. It is absolute on its face, and the plaintiffs in error deny that it was intended to be conditional. They also contend, that no parol evidence is admissible to vary a written contract, by introducing into it a condition which entirely changes its character. The argument has turned chiefly on the admissibility of this testimony. The court will not inquire, whether the parol evidence offered in this case can be introduced to vary the contract, because a preliminary question arises to which the testimony is, they think, certainly applicable. That question is, Has the contract been executed? It is set up by the defendants in their answer, and the general replication puts it in issue. It was therefore incumbent on those who sought to avail themselves of it to prove it.

Thomas Nevit, the subscribing witness to the signature of Thomas B. Beale, has not been examined. If this omission can be accounted for, inferior evidence would undoubtedly be admissible to establish this all important fact; but the whole of this evidence must be examinable. The delivery itself, and the circumstances under which it was made, are open to both parties. The questions whether the instrument ever became a deed; whether it was delivered as an escrow, whose completion depended on subsequent events, which never happened, or was a complete contract when signed by those whose signatures are affixed to it; are entirely distinct from the question how far a written contract may be varied by parol evidence.

The plaintiffs in error rely on the fact, that the instrument was left in possession of Mr Peter. This circumstance is certainly entitled to consideration; but it is not conclusive. It is open to explanation; and all the testimony shows, that it was placed in his hands to obtain the signature of his creditors. Clement Smith expressly avers it.

The deposition of Mr John Peter was taken, on the part of the plaintiffs in error, for the purpose of showing, among other things, that the release was unconditional. But he is a party to the suit on the record, and his deposition is not admissible.

The deposition of George Peter, one of the creditors of John Peter who executed the deed of release, is also taken for the same purpose. He was one of the devisees of Elizabeth Peter;

but released his interest in the property before he gave his deposition. He also is a party on the record, and this objection is made to his testimony.

All objections to the competency and admissibility of these depositions, were reserved by the defendants in error, and may be now made. They cannot therefore be read.

The defendants in error produced the record of a suit in chancery, in which John Peter and George Peter, among others, were plaintiffs, for the purpose of showing, that the release was not fully executed. But the devisees of Elizabeth Peter were not parties to that suit, and cannot be affected by it. They also produced several depositions.

Francis Dodge was one of the creditors of John Peter, but did not execute the release. He was applied to by Mr Peter to sign it, who stated, as well as the deponent recollects, " that if any one of his creditors objected to sign, the whole arrangements would fail."

Clement Smith, who was trustee of the effects of John Peter which were assigned for the benefit of his creditors, was asked, " Was it not a part of the said scheme, that it should be inoperative and void in respect of all parties, including the said John Peter, his friends, and releasing creditors, in case any of his creditors should refuse to release said John Peter from his debts?" He says, "I answer without hesitation, that such was my impression. I did then, and do now, believe that it was so understood by all the parties, who on that condition alone signed the release." This witness signed the deed of release as attorney for some of the releasing creditors. He also states several circumstances confirmatory of the opinion, that the release was not to take effect unless signed by all the creditors of John Peter.

The record also contains two letters, addressed while the transaction was depending, to William Fowle & Co., who were among his creditors.

The first is dated the 25th of April 1820. In that, speaking of his friends, he says, " They have come forward and agreed to loan me a cash capital of fifteen thousand dollars; but on the special condition that I obtain a release from all my creditors, and keep my old and new business entirely separate."

His second letter, dated the 28th of April, expresses his regret that William Fowle & Co were not at liberty to sign the release; repeats the idea, that his friends, who had promised him a loan of fifteen thousand dollars, had made a condition, that he should obtain a release from all his creditors; and after renewing his application respecting the release from Fowle & Co. adds, "every day's delay may diminish the zeal of my friends, therefore let me hear from you by return of mail, with an authority, I hope, to Clement Smith to release as it respects me." Clement Smith says that "J. Peter called on him for the notes and funds which his friends had deposited with Smith, to be delivered to Peter, when the condition on which they were to be delivered should be performed. The deponent declined complying with this request, because he understood that some of the creditors had refused to sign the release." He left the room, and returned in a few moments with a letter in his hand, and said, "The business is all at an end." "Mr Fowle, or some other person to whom he had written, having refused to sign or release his debt."

The letter to Mr Fowle, and that part of the deposition of Mr Smith which has just been cited, refer particularly to the contract for advancing money to enable Mr Peter to recommence business; but they are not without influence on the question, whether the release was completely executed. That instrument was dated on the 27th of April 1820. It purports to be made between John Peter and his creditors, indorsers, and sureties; that is, all his creditors, &c. It states the assignment made by Peter of all his remaining effects to Clement Smith, for their benefit; their purpose to advance him a sum of money, that he may again go into business; but their unwillingness to do so, so long as the new capital of the said J. P. may be liable to his former debts; that they "are willing, in consideration of the premises, to release him from all his debts and liabilities, so that he may hold his future property and stock in trade exempt from their respective claims." After reciting the names of the creditors, and stating the amount of their several claims, it proceeds to say, that "in consideration of the premises, the creditors, &c., have released, &c., and do release, &c., the said John Peter, his heirs, &c., from all their aforesaid several claims, &c." The same instrument proceeds to appoint Clem-

38

ent Smith, who is a party thereto, trustee of all the estate and effects assigned by John Peter, for their benefit.

The release is in consideration of the assignment. The advance of money and the release are obviously parts of the transaction, and are closely connected with each other. The purpose intended by all those who signed the release could not be accomplished unless it should be signed by all.

It is in evidence too, that the failure of the release prevented the trustee from carrying the deed of assignment which constituted its consideration, into execution.

On a full consideration of these circumstances, we are of opinion, that the release was never fully executed, and did not become the deed of the parties.

The plaintiffs in error also contend, that Thomas B. Beale, by his conduct in his lifetime, forfeited his right to enforce the payment of the mortgage debt against the said Elizabeth Peter, or her representatives. The answer alleges, 1st. That though he lived more than eleven years after the execution of the mortgage, he never did assert any claim, or even intimate to the said Elizabeth, or to any of her friends or advisers, the existence of such claim.

2dly. That by concealment of the said mortgage debt, lapse of time, and collusion with the said John, in the said sale to said Elizabeth, he and his representatives have lost all claim, either in law or in equity.

These objections, it may be observed, cannot be connected with the release. That bears date in 1820, and the mortgage deed was executed in 1809. If, therefore, he never did assert any claim, or intimate its existence to the said Elizabeth or her friends, he was not restrained from doing so by having released it. But the mortgage deed was recorded, and this is considered in law, as notice to all the world, and dispenses with the necessity of personal notice to purchasers. A deed cannot with any propriety be said to be concealed, which is placed upon the public record, as required by law; nor can a previous conveyance and delivery of title deeds to a purchaser, be justly denominated collusion, because a subsequent incumbrance is taken on the same property. Common prudence would have directed Mrs Peter to search the records of the county, before she paid the purchase money. Had she done so, she would

have found the deed to Mr Beale. It is not in proof that he has done any act to deceive or mislead her. He has been merely silent respecting a deed which was recorded as the law directs.

We are opinion that there is no error in the decree of the circuit court.

It is affirmed, with costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the District of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is the opinion of this court, that there is no error in the decree of the said circuit court in this cause. Whereupon, it is considered, ordered and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed with costs and damages, at the rate of six per cent per annum.