38 C.C.P.A.(Patents)

**WILLSON et al. v. GRAPHOL PRODUCTS CO., Inc.**

No. 5781.

United States Court of Customs
and Patent Appeals.
April 10, 1951.

Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa. (Jo. Baily Brown, Pittsburgh, Pa., of counsel), for appellants.

Cushman, Darby & Cushman, Washington, D. C. (William M. Cushman, Washington, D. C., of counsel), for appellee.

JOHNSON, Judge.

On May 4, 1944, appellee filed petitions to cancel appellants' registrations "Grafo" and "Grafolube" pursuant to section 13 of the

Trade-Mark Act of 1905 (formerly 15 U.S.C.A. § 93, now 15 U.S.C.A. §§ 1064, 1068, 1070). The Examiner of Interferences sustained the petitions, whereupon the records were consolidated and appealed to the commissioner, and on his affirmance of the examiner, to this court. On January 6, 1948, an opinion was handed down remanding the case to the commissioner for the purpose of taking additional testimony, this court having found that section 19 of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1069, relating to the defense of laches, was applicable. 165 F.2d 446, 35 C.C.P.A., Patents, 857. After both parties had taken testimony, the Examiner of Interferences again found for appellee, was affirmed by the commissioner, and appeal was again had to this court.

There is no dispute as to the facts, which appear to be as follows: Appellee is the owner or registration No. 194,841 for the mark "Graphol." The mark was registered January 27, 1925, as applied to "Rust Solvent and Penetrating Lubricant." Continuous use was stated to be since January 1922. Appellants are the owners of registration No. 316,676 for the mark "Grafo," granted September 4, 1934 as applied to "Lubricating Oil Compound," and registration No. 310,077 for the mark "Grafolube," granted February 13, 1934 as applied to "Lubricating Oil Compounds." Continuous use of both of these marks was stated to be since August 1933.

On May 4, 1944, about ten years subsequent to appellants' registration dates, appellee filed petitions to cancel both marks.

The marks of both parties have been in continuous use and have not been abandoned. Both parties claim a territorial distribution which covers the entire United States. Both organizations are small and do most of their selling by personal contact, correspondence and telephone. None of the goods are sold over the counter by retail dealers. Appellee's annual sales during 1944, its best year, amounted to approximately $25,000 and had fluctuated between $11,000 and $18,000 in the years preceding the recent war. Appellants' sales for the year 1944 were $58,000 and had averaged $30,000 per year in the years prior to the war. Appellants' witness stated that it would cost appellants many thousands of dollars and cause irreparable loss to their business if they were forced to change their marks.

At various times since 1935 appellants had advertised their merchandise with their marks attached in the following publications: "Jobber Topics," "Purchasing," "Manufacturers Register," "Thomas Register of American Manufacturers," "MacRae's Blue Book," and "Plant-Production Directory." There was undisputed testimony that appellee had no actual knowledge of the use of the trade-marks "Grafo" and "Grafolube" until shortly before the cancellation proceedings were brought.

Appellee's first actual knowledge of appellants' trade-marks was gained in February 1944, when, in contemplation of selling or recapitalization, counsel was retained to locate and eliminate any interfering marks. A search of the Patent Office records revealed the marks of appellants and cancellation proceedings were instituted.

The Patent Office tribunals held in the previous proceedings that the marks of appellants so closely resembled the mark of appellee that, when used on goods of admittedly the same descriptive properties, they would be likely to cause confusion in trade and deception of purchasers. These same tribunals in the later hearing of the case after remand considered only the defense of laches and held that there had been no actual knowledge; that the advertising was not of such a nature or extent that it might be assumed that the petitioner in its normal commercial activity would have seen it or otherwise heard of appellants' activity; that appellants' registrations did not constitute constructive notice, and consequently that appellee was not guilty of laches and was entitled to prevail.

Appellants contend that the commissioner erred in the following:

1. In refusing to consider issues other than laches on remand and thus refusing to look again at appellants' contentions that the marks are not confusingly similar, and that the record negatives actual or probable confusion and consequent injury.

2. In failing to hold that appellee had constructive notice of appellants' marks by means of the advertising shown.

3. In failing to hold that appellants' 1905 Act registration was constructive notice to appellee of appellants' marks.

4. In failing to hold that appellee was barred by laches from obtaining any relief.

■ Taking these points up in the order in which they appear, we find ourselves in agreement with the commissioner as to the similarity of the marks and the likelihood of confusion. We entertain no doubt that had appellee opposed the registration of these marks at the appropriate time it would have been successful. Assuming but not deciding, that appellee has shown such injury as to satisfy section 13 of the Trade-Mark Act of 1905 (formerly 15 U.S.C. § 93 now 15 U.S.C.A. §§ 1064, 1068, 1070), we proceed to the question of notice and laches.

■ As to the effect of the advertising, we agree with the commissioner, and adopt his observations: The advertising referred to was published in certain registers or directories and in certain trade publications. The testimony now presented for petitioner shows that it had no access to any of these publications until almost immediately before bringing the petitions for cancelation. Petitioner is a small concern and the only persons who might have had knowledge specifically testified that they had seen none of these publications and had never heard of the respondent's use of its mark until about the time the petitions were filed. It is clearly shown that no actual knowledge existed, nor is the advertising of such a nature or extent that it may be assumed that the petitioner in its normal commercial activity would have seen it or otherwise heard of respondent's activity. In fact, respondent who clearly had access to at least one of the registers in which petitioner's mark was also listed states that he had never heard of petitioner's mark prior to these proceedings. Based on actual knowledge or upon knowledge to be imputed because of advertising of respondent there clearly was no notice to petitioner of the existence of respondent's marks or the registration thereof.

We thus come to the question of the effect of the 1905 Act registrations as notice.

■ It is urged on behalf of appellee, and was held by the Examiner of Interferences, that registration under the 1905 Act is not legally constructive notice, citing United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, and General Baking Co. v. Gorman, 1 Cir., 3 F.2d 891. These cases have been carefully studied as well as all others which could be found dealing with the principle therein laid down. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; U. S. Printing and Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650; American Trading Co. v. H. E. Heacock Co., 285 U.S. 247, 52 S.Ct. 387, 76 L.Ed. 740; General Baking Co. v. Goldblatt Bros., 7 Cir., 90 F.2d 241; Griesedieck Western Brewery Co. v. Peoples Brewing Co., 8 Cir., 149 F.2d 1019; George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536; Standard Brewery Co. v. Interboro Brewing Co., 2 Cir., 229 F. 543; Arrow Distilleries, Inc., v. Globe Brewing Co., D. C., 30 F.Supp. 270. With the exception of Standard Brewery Co. v. Interboro Brewing Co., a decision which cited no authority, and which has never been followed, the foregoing cases are unanimous in denying that federal registration had any effect as notice. Before going any further, however, it is well to see exactly what problem these cases were treating and exactly what they decided. In each of these cases, except the Hanover case, where no registration was involved, an injunction was sought to prevent future infringement of a registered trade-mark by an alleged infringer whose use had innocently grown up in an area untouched by the plaintiff's trade. The issue thus was the effect of federal registration, the territorial scope of its protection, and whether a subsequent user innocent in fact could be innocent in law once the plaintiff's mark was registered. The conclusions are well known today. A

trade-mark is not a grant, does not spring up through registration as do patents and copyrights, but is a right growing out of use. United Drug Co. v. Theodore Rectanus Co., supra. The federal trade-mark statutes did not attempt to create exclusive rights in marks, but attempted to provide appropriate procedure and to give protection and remedies for rights that already existed. American Trading Co. v. H. E. Heacock Co., supra. Thus federal registration was not such constructive notice as to make it impossible for a later good faith user to gain rights in the mark in an area into which the registrant's trade had not extended. To have held otherwise would have given federal registration the effect of a grant, a grant to the registrant of trade-mark rights beyond the common law rights he had acquired by use.

 Clearly the case before us presents a different aspect of constructive notice. As has been pointed out many times in the past, the Patent Office and this court pass upon the statutory question of the registrability of trade-marks and not upon the common law right to use a particular mark. Proctor & Gamble Co. v. J. L. Prescott Co., 77 F.2d 98, 22 C.C.P.A., Patents, 1173; White House Milk Products Co. v. Dwinell-Wright Co., 111 F.2d 490, 27 C.C.P.A., Patents, 1194. The distinction is important because frequently in the past these rights have not co-existed in the same person. U. S. Printing & Lithograph Co. v. Griggs, Cooper & Co., supra; General Baking Co. v. Gorman, supra; H. Kuhn & Sons, Inc. v. Letts, 52 App.D.C. 236, 285 F. 970. The instant question being one of registrability, and laches having been no defense prior to the 1946 Trade-Mark Act, Cluett, Peabody & Co., Inc., v. Hartogensis (Arrow Emblem Co., Inc., Substituted), 41 F.2d 94, 17 C.C.P.A., Patents, 1166, the question appears as one of first impression before this court.

 The intent of the framers of the 1946 Trade-Mark Act in inserting section 19 authorizing the consideration of laches, as suggested by the hearings before the Committee on Patents of the House of Representatives, Hearings before Committee on Patents, Subcommittee on Trade-Marks, on H.R. 102, H.R. 5461, and S. 895, 77th Cong., 1st Sess. 153, 154 (1941), was that this section would eliminate the hardship following literal interpretation of section 13 of the 1905 Act. Under that Act cancellation petitioners guilty of gross laches were allowed to cancel subsequent registrations regardless of how much hardship resulted. Proctor & Gamble Co. v. J. R. Prescott Co., supra. Section 19 of the 1946 Act makes available the defense of laches and thus frees the registrant to present an equitable defense which, in the eyes of the committee, he should have been free to present at all times. Thus this section creates no new defense but removes a statutory impediment to consideration of an old defense which had always existed.

Our predecessor, the Court of Appeals of the District of Columbia, had reached a conclusion opposite to our own and did not consider that section 13 of the 1905 Act precluded the defense of laches. In Gerstendorfer Bros. v. United Supply Co., 58 App.D.C. 192, 26 F.2d 564, the petitioner sought the cancellation of respondent's mark "Samoline" which had been registered and in use for a period of fifteen years. It is not clear whether the petitioner had actual knowledge of the respondent's trade-mark or not. The Patent Office had refused the cancellation on the grounds that the goods on which the marks were used were not of the same descriptive properties, and that even if they were, the petitioner through his long delay and failure to object had lost the right to institute cancellation proceedings. On this last point the Court of Appeals said: "Considering the doubt thus raised in connection with the fact that the trade-mark 'Samoline' has been appropriated and used on the goods produced by appellee company for more than fifteen years, and that no objection was interposed by the petitioner company, we agree with the holding of the Commissioner that 'under these circumstances this Office would not be justified in disturbing in any way at this time the registrant's rights respecting its trade-marks. If the petitioners ever had any right to oppose the right of the registrant to register its marks, such

right of the petitioners has been lost by laches. * * *'"

A search of the Appeals Courts' infringement decisions in which laches were considered brings to light only one case in which it appears that both marks involved were registered. In C. B. Fleet Co., Inc. v. Mobile Drug Co., 5 Cir., 284 F. 813, 815, the plaintiff was the owner of the mark "Phospho-Soda" registered under the Act of 1905. His use of the mark dated back to 1894 and his registration to 1916. The defendant's predecessor had been selling a similar preparation under the name "Phospho" and had registered his mark in 1902. The court refused to grant the plaintiff an injunction and said:

"But the court could well have dismissed this bill and denied relief because of the laches of plaintiff which it disclosed. The defendant and its predecessors had been manufacturing their preparation since at least 1902. *Its alleged trade-mark 'Phospho' was registered in that year.* In 1911 this business and all rights in said name were disposed of by their then owners to the present defendant. During all this time the plaintiff took no steps to prevent the building up of said business, the outlay made therein, nor its sale to the defendant, after 9 years of prior use by the vendor but sat quiet during the continued public conduct thereof by the defendant for ten more years, before the bill was filed in this case. *It is true that plaintiff alleges, generally, that it was ignorant of the facts until recently; but no reason why it was so ignorant, no concealment by defendant, is alleged.*

"* * * We think the facts disclosed by the plaintiff's own averments showed such laches as deprives him of equitable relief." [Italics ours.]

In the present case it is conceded that appellee had no actual knowledge of the appellants' registration or use of the mark in trade. It is also conceded that this cancellation proceeding was not instituted because appellee had finally become aware of appellants' competing trade but was instituted after *a search of the Patent Office records* pursuant to a contemplated recapitalization or sale of appellee's business. Thus the Patent Office record of registrations was used by appellee for exactly the purpose that appellants contend it serves, *as public notice of rights claimed in the listed marks.* The language of this court in our preceding disposition of this case is deemed apt: The petitions herein were not filed until about ten years subsequent to the dates of appellants' registrations. If registrations in the Patent Office are to be considered as public records, it would appear that appellee might be deemed to have had constructive notice of them as of the dates thereon. If knowledge is to be presumed by reason of such notice, and appellee knowingly stood idly by for about ten years during which time appellants innocently conducted, developed, and advertised their business, it would seem that the doctrine of laches could apply. * * *

In Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956, 960, certiorari denied, 311 U.S. 708, 61 S.Ct. 174, 85 L.Ed. 459, the plaintiff, Obear-Nester, had brought suit against Walgreen Drug Stores charging infringement of its statutory trade-mark. Corning Glass Works was allowed to intervene and defended the suit.

Plaintiff had registered its mark "Rex" in 1900 for prescription bottles. Defendant had registered its mark "Pyrex" in 1917 and had continuously used it thereafter to designate glassware with special heat resistant properties. In 1922 defendant commenced using its mark on nursing bottles and registered "Pyrex" for nursing bottles in 1924. Plaintiff first applied its mark "Rex" to nursing bottles in 1928 and subsequently sought an injunction upon the alleged infringement of its statutory mark as applied to nursing bottles. There was no claim of unfair competition, unfair practices, or fraud. The court, holding that defendant's high quality nursing bottles were not of the same descriptive properties as plaintiff's prescription bottles, and noting that plaintiff had entered the nursing bottle field after defendant had acquired prior rights there, refused to grant the injunction. The following language from the

opinion is thought particularly appropriate and is quoted at length:

"* * * Mere registration under the Federal Act does not create a trade-mark and confers no new rights to the mark claimed, nor, indeed, any greater rights than already existed at common law without registration. [Citing cases.] *Registration is a method of recording for the protection of dealers, the public, and owners of trade-marks. It is notice of the claims of the owner affecting his right to the mark.* * * *

"It appears from the sworn declaration of plaintiff in its application for registration that it claimed to have acquired a common law right to the exclusive use of the trade-mark 'Rex' upon prescription bottles. It so limited its claim at the time of its original registration and again when it filed its application, April 25, 1927, for a re-registration of its mark. *This was in the nature of a notice to the owners of trademarks, to dealers, and to the whole world, that Obear-Nester was claiming the right to the exclusive use of this trademark on prescription bottles only.* * * *" [Italics ours.]

The court further likened the situation to that existing in the patent field when a reissue patentee sues on broadened reissue claims and encounters intervening rights. The language of the Supreme Court in Sontag Chain Stores Co. v. National Nut Co. of California, 310 U.S. 281, 293, 60 S.Ct. 961, 967, 84 L.Ed. 1204, was quoted as applicable in principle: "In the case under consideration the patentee might have included in the application for the original patent, claims broad enough to embrace petitioner's accused machine, but did not. This *'gave the public to understand'* that whatever was not claimed 'did not come within his patent and might rightfully be made by anyone.' * * *" [Italics ours.]

The Court of Appeals thus decided that federal registrations were constructive notice of their existence and of what information was contained in the records.

■ Manifestly, registrations under the Act of 1905 are public records, appellee's very use of those registrations attests that fact. Where a person has a proprietary right or claim and statutory provision exists for the recordation of that right or claim it has been almost uniformly held that such record is notice to the world of the interest recorded. Thus in the case of a deed to land, Wineman v. Gastrell, 5 Cir., 53 F. 697; Socrates Quicksilver Mines v. Carr Realty Co., 9 Cir., 130 F. 293, 297; a mortgage on land, Dick v. Balch, 8 Pet. 30, 33 U.S. 30, 8 L.Ed. 856; Levinz v. Will, 1 Dall. 430, 1 U.S. 430, 1 L.Ed. 209; a chattel mortgage, Northwestern Nat. Bank. v. Freeman, 171 U.S. 620, 19 S.Ct. 36, 43 L. Ed. 307; a conditional sale, Cable Co. of Alabama v. Stewart, 5 Cir., 191 F. 699; Meyer Herson Auto Sales Co. v. Faunkhauser, 62 App.D.C. 161, 65 F.2d 655; a patent assignment, Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923; Paulus v. M. M. Buck Mfg. Co., 8 Cir., 129 F. 594; and a copyright assignment, Brady v. Reliance Motion Picture Corp., D.C., 232 F. 259; Photo-Drama Motion Picture Co. v. Social Uplift Film Corp., 2 Cir., 220 F. 448; any prospective purchaser is constructively notified of what the pertinent public records contain and will not be heard to complain that he acted in ignorance of the facts.

■ We are of opinion that registrations under the 1905 Act are public records and that as such they constitute such constructive notice as will preclude a cancellation petitioner from pleading ignorance of the existence of a particular mark.

The commissioner's decision raises the point, and we think it should be laid to rest, that if registration is to be held constructive notice to appellee, then it would also have been constructive notice to appellant and would affect its claim of concurrent use in good faith. For several reasons we consider this to be an untenable objection.

■ It first must be realized that in holding that appellants' registrations constitute constructive notice of their existence as registrations to appellee, a cancellation petitioner, we upturn no precedents and overrule no decisions. This court, refusing to recognize equitable defenses in a cancellation proceeding, had no cause or oppor-

tunity to examine the effect of registration. Our predecessor, the Court of Appeals for the District of Columbia, recognizing equitable defenses, had refused to cancel a mark where the petitioner delayed fifteen years in seeking such cancellation. In infringement suits it has been uniformly recognized that registering a trade-mark is no safeguard against the defense of laches. Thomas J. Carroll & Son Co. v. McIlvaine & Baldwin, 2 Cir., 183 F. 22; Fruit Industries v. Bisceglia Bros. Corporation, 3 Cir., 101 F.2d 752. Whereas *intentional* use of another's trade-mark cannot be innocent, is actual fraud, and will seldom support a defense of laches, Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526; Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 39, 21 S.Ct. 7, 45 L.Ed. 60, *constructive* fraud will not bar the defense unless there is great diligence on a plaintiff's part. McIntire v. Pryor, 173 U.S. 38, 54, 19 S.Ct. 352, 43 L.Ed. 606. We are aware of no case which has held an infringer guilty of constructive fraud because the mark he innocently selected was registered. The cases to the contrary, holding the defense of laches valid in such a situation, are too numerous to be completely cited. Thomas J. Carroll & Son Co. v. McIlvaine & Baldwin, supra; Fruit Industries v. Bisceglia Bros. Corporation, supra.

To hold that a trade-mark registrant in order to claim good faith must search and find all prior interfering registrations would transfer the burden of examining and searching trade-mark applications from the Patent Office to the applicant. Clearly this cannot be the law.

It is our opinion that appellants' registration constituted constructive notice to appellee, and that appellee, having stood idly by for some ten years during which time appellants innocently conducted and built up their business until it was larger than that of appellee, is now precluded by laches from obtaining cancellation of appellants' trade-marks.

The following language of the court in Old Lexington Club Distillery Co. v. Kentucky Distilleries & Warehouse Co., D.C., 234 F. 464, 469, affirmed, D.C., 247 F. 1005,

seems singularly appropriate: "* * * For one to permit another to build up a reputation for one's goods under a trade-name for a long period of time, and then to assert an exclusive right to that name, and thereby acquire the benefit of the reputation and trade which the other has built up, when it lay in the power of the former at any time to have arrested the use of the trade-name by the latter, seems to me most inequitable, because, if the right had been asserted before the reputation was acquired, the infringer could have adopted another name and built his reputation on it. * * *"

For the reasons hereinbefore stated the decision of the Commissioner of Patents is *reversed*.

Reversed.