34 C.C.P.A. (Patents)

LANTZ BROS. BAKING CO. v. GRANDMA CAKE CO. et al.

Patent Appeal No. 5213.

Court of Customs and Patent Appeals.

April 22, 1947.

Rehearing Denied June-13, 1947.

740

Eugene C. Taylor, of Washington, D. C., and Don A. Fischer, and Dunbar & Biggs, all of St. Louis, Mo. (James V. Dunbar, of St. Louis, Mo., of counsel), for appellant.

Harry F. Riley, of Washington, D. C., for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents (speaking through the First Assistant Commissioner), 64 USPQ 426, reversing the decision of the Examiner of Trade-Mark Interfer-

ences in a trade-mark interference proceeding involving appellant's application (serial No. 435,505) for registration of the word "Grandma's" as a trade-mark for cakes and cookies, and two registrations (No. 250,762 and No. 266,411) for the same word used for cookies and cakes, respectively, which registrations at the time of the final decisions by the tribunals of the Patent Office had been assigned to Grandma Baking Company, and substituted appellee.

The application of appellant (which seems to be a firm or partnership, not incorporated, having its place of business at St. Louis, Missouri) was filed August 29, 1940. It was therein alleged: "The trademark has been used by applicants since September 3, 1912, when they acquired it together with the business of their predecessor who used the trade-mark 'Grandma's' as early as July 1, 1911."

Registration No. 250,762 was issued in the name of Grandma Cookie Company, recited to be "a firm domiciled in Oakland, Alameda County, California * * * composed of * * * Frederick C. Busche and Alice K. Busche." It alleged the use of "Grandma's" on chocolate cake, raisin cake, nut cake, marble cake, and cookies, declaring that it had been "continuously used and applied to said goods in applicant's business since February 1, 1913." The application was filed October 6, 1926, and registration was entered December 18, 1928.

Registration No. 266,411, for use of "Grandma's" on cakes, was issued to Grandma Cake Company, a corporation of the State of California, doing business at Oakland, January 14, 1930, upon an application filed March 25, 1929, the certificate of registration being signed "Grandma Cake Co., by Frederick C. Busche, President." The certificate states use "in applicant's business since March first, 1929," and also states "Applicant is the owner of registration No. 250,762 [supra], Grandma Cookie Co., December 18, 1928."

The Grandma Baking Company's relation to the case is hereinafter described.

Both parties took testimony and numerous exhibits were introduced in evidence.

The record discloses that, probably as early as 1904, Frederick C. Busche established a small bakery industry in the city of St. Louis, Missouri, where he then resided, his principal product being cookies which he baked and, in the beginning, personally sold and delivered to customers in the city of St. Louis. The business gradually expanded locally and, at least as early as 1912, he had extended it into some other states. For a time, apparently, he referred to his cookies as "home made" cookies, but by 1911 or earlier they had been designated and had become known as "Grandma's Cookies."

In other words, he had adopted and used "Grandma's" as a distinctive trade-mark for his goods, although he did not seek to register it in the Patent Office until many years later, on the dates hereinbefore recited, and then not in his individual name but through companies which he had organized.

In 1912 Busche decided to sell his St. Louis business, move to California, and establish a bakery business there. One of his customers in St. Louis was a restaurant proprietor by the name of George Lantz, and when Lantz learned of Busche's desire to sell he indicated that he might buy the business for his (Lantz's) two sons, Albert W. and George R., who subsequently became the firm which is appellant here.

After some negotiation the trade was consummated, the elder Lantz paying $4,000 for the business. The bill of sale executed by Busche August 30, 1912, described the property transferred as follows:

"The entire stock and fixtures, now in the building situated at 4027 Pleasant St. and used by me in the manufacturing of 'home made cookies,' together with the complete recipe for making said cookies, and the good name and good will of the business heretofore carried on by me at the above mentioned location."

At the time of the transfer Geo. R. Lantz and Albert W. Lantz were, respectively, about 17 and 20 years of age. They seem to have taken over the business on September 3, 1912, and to have operated it under the name of F. C. Busche Company—which had been the name while owned and operated by Busche. Busche remained with the business for about six weeks giving instructions to the young men, particularly to Albert, about the preparation of the dough and the method of baking as well as the matter of merchandising the product. He made some trips with Albert Lantz to see customers in other states.

By a written instrument dated February 1, 1913, and acknowledged before a Notary Public January 30, 1914, the elder Lantz conveyed and transferred the business to his sons, Albert W. and George R. It is not shown just when this instrument of conveyance was actually delivered to the brothers. George R. Lantz testified:

"After we paid for the business in about the fall of 1914 he [referring to his father] gave us title to the business, and at that time we changed the name and Lantz Brothers became a company. During the period from September, 1912, to the time we received title, the business was operated under the name of F. C. Busche Company."

The "good name" (which was "F. C. Busche Company") was specified as being transferred in the quotation from the conveyance, supra.

The trade-mark "Grandma's" was used by the brothers during the period (from about September 1, 1912, to some time in 1914) in which they were operating the business under the name of F. C. Busche Company, just as Busche himself had been using it, and after they began to operate under the name of Lantz Brothers Baking Company they continued its use in the same manner, but without registering it in the Patent Office, or seeking to register it, until the filing of the application here involved on August 29, 1940. It was so used with the full knowledge and consent of Busche.

It may be said at this point that, according to the testimony, the business of Lantz Brothers has grown from its small beginning to one of large proportions, the merchandise being sold at the time the testimony here was taken in 1942, in 38 different states, and some twelve million labels bearing the trade-mark being used during

a twelve-month period. Mr. Busche also developed a large business in California and other Western states to which reference is hereinafter made.

It is noted that there was no mention of the word "Grandma's," nor any specific reference to "trade-mark" or "trade-mark rights" in either the conveyance from Busche to Lantz, or in that from Lantz to his sons, a matter to which we hereinafter advert. We turn now to a recital of the activities of Busche after his removal to California which was sometime prior to January 1913.

It appears to have been his intention at first to locate at Los Angeles and establish a bakery for making there the same kind of cookies that he had baked in St. Louis and sold under the name "Grandma's" (cookies being the particular bakery product which, at least at that time, he seems to have preferred) but he found that a brother with whom he did not wish to compete had located at Los Angeles and established there a cookie-baking business. Accordingly, early in January 1913 he located in San Francisco where he organized Grandma Cookie Company (which was not then a corporation but a copartnership consisting of only himself and wife, Alice K. Busche) which began baking and marketing cookies in San Francisco and vicinity about February 1, 1913, under the trademark "Grandma's." Sometime in 1914 the business was moved to Oakland, California, and there continued operation as F. C. Busche, doing business as Grandma Cookie Company, the San Francisco plant being discontinued. At some time—probably in 1915—the concern began baking and marketing different kinds of cakes in addition to the cookies, and these were marketed as "Grandma's Cake," being wrapped in paper bearing that label.

As we understand it, Busche's company, or copartnership, never entered the Los Angeles market with its cookies, but at some time prior to 1925 he did establish a cake-baking business there, which eventually was taken over by a "family-owned" corporation which he caused to be organized. The testimony of Mr. Busche himself is not altogether clear as to the different business structures and corporations which he caused to be organized as his business established in California expanded, but one of his witnesses, Mr. W. J. Young, General Manager of the substituted appellee (Grandma Baking Company), gave the following testimony:

"* * * Going back to its inception, from the evidence that I have personally seen, and from books that I have personally audited, F. C. Busche operated as an individual for approximately one month, the month of January, 1913. On or about that time he operated as F. C. Busche, doing business as Grandma Cookie Co., at 2054 Market street, in San Francisco. He subsequently moved to Oakland during the year 1914, and operated as F. C. Busche, doing business as Grandma Cookie Co. Shortly prior to the year 1925 Mr. Busche caused to be organized three corporate structures, the first of which was the Grandma Cookie Co., the second the Grandma Cake Co., and the third the Grandma Baking Co. The first of these corporations to be used was the Grandma Baking Co., which took over the business of F. C. Busche, individually, doing business in Los Angeles, and the transfer was made as of July 1, 1925, and all of the capital stock of the Grandma Baking Co., with the exception of the qualifying shares, was issued to Mr. Busche in exchange for the assets of the individual proprietorship. The Oakland operations continued under the name of the Grandma Cookie Co. until July 1, 1927, at which time Mr. Busche separated the cake and cookie departments, which were then on two separate premises, and made a gift of the cookie department to his daughter, Grace. She started her operations on July 1, 1927. The Grandma Cake Co., the corporation, took over the assets of the Grandma Cookie Co., or the remaining assets other than those that were transferred to Grace which would mean the cake department as of January 1, 1928. The corporate structure set up for the Grandma Cookie Co. was never used, and was permitted to die.

"Q. 77. What company was that? A. 77. The Grandma Cookie Co., Incorporated. On July 1, 1931, the Grandma Cake Co., Incorporated, bought the individual proprietorship of Grandma Cookie Co. from Grace Busche, and since that date the cake

and cookie operations were again combined at Oakland.

"Q. 78. Under what name? A. 78. Under the name of Grandma Cake Co., Incorporated. This condition continued until July 1, 1941, at which time the Grandma Baking Co., which up to that time was operated in Los Angeles, bought all of the operating assets of the Grandma Cake Co., which was operating in Oakland, and the Grandma Baking Co. of Los Angeles sold its real estate to the Grandma Cake Co., of Oakland, which leaves this current condition. The Grandma Cookie Co., Incorporated, at no time had anything other than a corporate structure. The Grandma Cake Co. today owns all of the real estate assets of both the Cake and Cookie Company, and the Grandma Baking Co. owns all of the operating assets."

The witness, in answer to a question whether he knew where the title of the trade-mark actually was at the time he was testifying, stated:

"In reality, the actual titles to the trade-marks have not been transferred in writing to the Grandma Baking Co. The title to the first registration [250,762], so far as the record would go, lays in F. C. Busche, doing business as the Grandma Cookie Co., and the title to the second registration [266,411] lays in the Grandma Cake Co., Incorporated, a corporation, which is still in existence. F. C. Busche and his family own the entire capital stock of both the Grandma Cake Co. and the Grandma Baking Co."

Formal conveyance of the registrations to Grandma Baking Company, apparently, was made after the date of Young's testimony. The date on which the transfer was made is not shown in the record but, as we view it, that date is immaterial to a determination of the issue before us.

Further testimony by the witness was to the effect that in a twelve-month period (his testimony was given December 30, 1942), the Oakland plant used approximately twelve million labels and the Los Angeles plant in excess of fifteen million, and that from 570,000 to 1,000,000 pounds of bakery products were made per month, depending upon the season. The labels, while varying as to size and form, all carry the notation "Grandma's," and the business extends into a number of far-Western states.

From the foregoing recitations, it is apparent that Frederick C. Busche originated use of the notation "Grandma's" as a trade-mark for cookies while he was engaged in the bakery business in St. Louis, Missouri, and that his sale of the business there to Lantz included the mark as a part of the assets conveyed. That the mark was not specifically mentioned in the instrument of conveyance, nor discussed during the negotiations between Busche and Lantz, is of no legal consequence. As stated by the commissioner, " * * * it is too well established to require citation of authorities that the good will of a business includes all trade-marks used in the conduct of such business; and the bill of sale from Busche to Lantz makes express reference to good will as a part of the assets conveyed." The record before us does not show that in making the sale Busche made any reservation respecting the trade-mark. It is noted that in the application filed October 6, 1926, which culminated in registration No. 250,762, February 1, 1913, is the date claimed for beginning use of the mark. This was after he had moved to California.

Oath to that application was made by Busche and he swore that he believed the Grandma Cookie Company to be the owner of the mark and that to the best of his knowledge and belief no other person, firm, corporation, or association had the right to use it.

In the light of the record it is difficult to understand the basis upon which the beliefs so expressed were predicated. Busche was charged with knowledge that he had parted with his legal right to the mark and the record shows that he had actual knowledge that the mark was being used by the Lantz people both on February 1, 1913, the date on which he claimed to have begun using it in California, and on October 6, 1926, the date he filed the application.

But there are additional facts which must be considered.

It is also evident from the record that the Lantz people had learned, prior to the filing date of Busche's first application, that he was using the mark in connection with his business established in California and, so far as disclosed, they never made any objection to his use of it. However, when Busche filed the application for registration in October 1926 Lantz Brothers Baking Company filed notice of opposition in the Patent Office. It was filed January 10, 1927, and thereafter negotiations seem to have been carried on which eventuated in an agreement, signed by the attorneys for the respective parties, which read:

"The controversy involved in this Opposition Proceeding having been settled amicably by an agreement between the parties providing for the withdrawal of this proceeding;

"Now, therefore, it is agreed between the parties that the Opposition heretofore filed may be withdrawn by the Opposer, and this proceeding terminated."

The agreement was filed in the Patent Office October 11, 1928, and, as has been recited, the registration was issued to Busche's company December 18, 1928.

The record is silent as to the reasons which led Lantz Brothers to withdraw opposition to the registration by Busche of a trade-mark which they owned, and which evidently had become quite valuable at the time Busche made the application.

An additional matter deemed by the commissioner to be prejudicial to the Lantz Brothers arose in connection with the second application of Busche (which resulted in registration 266,411), notice of which was published in the Official Gazette of October 29, 1929. Through an attorney, Lantz Brothers Baking Company addressed a letter to Busche, under date of November 7, 1929, in which it was said:

"We presume that this application is made either by you or your company, and we are, therefore, writing to you to verify the same. You understand that if the mark is not yours, that we propose to institute an opposition on behalf of Lantz Bros. Baking Co."

No opposition was filed.

Based upon the state of facts so recited, Assistant Commissioner Leslie Frazer reversed the decision of the Examiner of Trade-Mark Interferences, saying, inter alia:

"In the instant case it is my opinion that Lantz Brothers Baking Company has lulled Grandma Baking Company and its predecessors into a sense of security, and has deliberately induced them to believe that their use of the word "Grandma's" as a trade-mark for their bakery products was unobjectionable. This has been accomplished not only by acquiescence and laches, but by such affirmative acts as the withdrawal of opposition to the first application to register and the tacit approval of the second. It follows that the Lantz Company is estopped to claim the exclusive right to the use of the mark.

"It may be, as asserted in the Lantz brief, that the two registrations here involved are subject to cancellation; for I agree with the examiner of interferences that Grandma Baking Company has not established priority of use, and were both parties now applying for registration I should be inclined to hold neither entitled thereto. That question, however, is not before me for determination."

We have found no case which may be said to be on all fours with the instant case as to the facts involved. It is unusual for an interference to arise between applications for registration and marks registered prior to the filing of the applications involved, but the statute provides for such interferences and in at least two instances cases of that character have been before this court.

The pertinent language of the statute (15 U.S.A. § 87, 15 U.S.C.A. § 87) reads:

"Whenever application is made for the registration of a trade-mark which is substantially identical with a trade-mark appropriated to goods of the same descriptive properties, for which a certificate of registration has been previously issued to another * * * the commissioner * * * may declare that an interference exists as to such trade-mark, and in every case of interference * * * he shall direct the examiner in charge of inter-

ferences to determine the question of the right of registration to such trade-mark * * *.

* * * * * *

"The commissioner * * * may refuse to register both of two interfering marks, or may register the mark, as a trade-mark, for the person first to adopt and use the mark, if otherwise entitled to register the same * * *."

The cases alluded to are Establissements Rene Beziers, Societe Anonyme v. Reid, Murdoch & Co., 48 F.2d 946, 18 C.C.P.A., Patents, 1340, and B. R. Baker Co. v. Lebow Brothers, 150 F.2d 580, 32 C.C.P.A., Patents, 1206.

In those cases the respective registrants established priority of use. In the instant case Grandma Baking Company, the substituted appellee, has not proved (and obviously could not prove) priority of use.

It would appear from the decision of the Assistant Commissioner that before him appellant suggested that both of appellee's registrations were subject to cancellation. No such contention was made before us. If appellant really thought this to be true it is difficult to understand why it did not institute a cancellation proceeding. The Assistant Commissioner, of course very properly, declined to rule upon the question of cancellation, and it is not before us.

It must be borne in mind that under the existing trade-mark registration law the only person who is entitled to the registration of a trade-mark is its owner, and that in order to be its owner that person must be entitled to its exclusive use.

So, in the final analysis, the question for determination here is whether by its actions appellant parted with its exclusive right to use the mark.

We may state that, in our opinion, the mere acquiescence in the use of the mark by Busche would not of itself necessarily have resulted in a legal forfeiture of the right of appellant to such exclusive use, but in the absence of any explanation of the withdrawal by appellant of the notice of opposition, under the circumstances herein recited, and in view of the letter hereinbefore set forth, written by appellant to Busche, we are forced to the conclusion that appellant intended to confer upon Busche the right to use the mark. Therefore, appellant cannot be held to be entitled to the exclusive use of the mark.

The decision of the commissioner is affirmed.

Affirmed.