37 C.C.P.A.(Patents)

## G. H. PACKWOOD MFG. CO. v. COFAX CORPORATION (three cases).

### Patent Appeal Nos. 5709–5711.

United States Court of Customs
and Patent Appeals.

June 30, 1950.

Rogers & Ezell, St. Louis, Mo. (Estill E. Ezell, St. Louis, Mo., of counsel) for appellant.

No appearance for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges.

O'CONNELL, Judge.

There are here three appeals from decisions of the Commissioner of Patents rendered by him in three opposition proceedings. The goods involved consist of certain office supplies. One appeal is from the commissioner's decision, 77 U.S.P.Q. 329, in opposition No. 24,197, where the identical mark "Pax" was used on the goods by both parties; the other appeals are from the commissioner's decision, 77 U.S.P.Q. 331, in oppositions Nos. 24,665 and 24,666, where the basic feature of the mark "Pax" was incorporated in appellee's two marks, "Pax-ite" and "Paxomat," and used in the sale of its goods. All three oppositions were dismissed by the commissioner.

The subject matter of the different controversies is closely related and but one record containing all the evidence has been submitted, much of which is overlapping. It is deemed appropriate therefore to consolidate the three appeals and discuss them in but one opinion.

These appeals involve the confusion in trade clause of section 5 of the Trade-Mark Act of 1905, 33 Stat. 725, as amended. The commissioner in reaching his final conclusion in the opposition No. 24,197, 77 U.S.P.Q. 329, stated he was influenced therein to some extent by the closely related features of the companion oppositions, Nos. 24,665 and 24,666, 77 U.S.P.Q. 331.

Both parties took testimony and submitted in evidence the several contested marks. At the hearings, the parties were represented by respective counsel who cross-examined witnesses.

G. H. Packwood, Jr., testified he had been president of appellant, a St. Louis organization, since its incorporation in 1926; that the principal products sold by appellant were industrial skin cleansers, or crystallized soaps, cleansing cream for removing hectograph ink stains from the hands, soap dispensing equipment, and a liquid cement to be used in the attachment of the soap dispensing equipment to walls or other surfaces.

Appellant's first registered trade-mark adopted for use with its hand and skin cleanser "Pack's" was issued February 14, 1928; the second registered mark adopted and used by appellant for its soaps, "Pax," was issued on February 19, 1929. On August 12, 1941, appellant again registered "Pax" for use with its dispensers of powdered or granulated soap. Appellant in its advertising and on printed labels also used the notation "Pax-C-Ment" in the sale of the liquid cement hereinbefore described.

In short, appellant since the beginning of 1929 had owned and continuously used "Pax," and subsequently the notation "Pax-C-Ment," on products manufactured and sold by appellant, including plastic cement, or liquid adhesive in small bottles, in the nature of glue, as a general purpose adhesive. Appellant also manufactured and sold crystallized soap for use either separately or in soap dispensers. Appellant also manufactured and sold the soap dispensers, each of which bore on the attached label both the appellant's registered trade-mark "Pax" and the notation "Pax-C-Ment."

The record discloses that long subsequent to the date of appellant's adoption and first use of its mark "Pax," appellee formed a New York corporation, the "Pax Writing Paper Co., Inc.," for the sale of stationery consisting of note paper and envelopes; that in March of 1943, the nature of appellee's business changed, and to conform therewith, appellee changed its corporate name to "Pax Plastics, Inc." and engaged in the manufacture and sale of pressure adhesive tape; that in May of 1943, appellee again changed its corporate name to the one it now bears: "The Colfax Corporation."

Appellee on May 26, 1943, sought to register "Pax" as a trade-mark, alleging that it had been continuously used in appellee's business since May 24, 1943, a period of two days, as a trade-mark "for pressure ad-

hesive tape for sealing package wrappings, paper and stationery and similar purposes" and for "adhesive tape dispensers." Appellee's application to register "Pax" was allowed and passed for publication by the Patent Office, March 20, 1945. Appellant on April 19, 1945, filed the notice of opposition, No. 24,197, relying on the prior use of the mark "Pax," as twice registered, and to some extent, on the prior registration of "Pack's" hereinbefore described.

Appellee's applications for registration, Nos. 484,242 and 484,244, were both filed June 7, 1945, and included the respective words "Paxite" and "Paxomat"; the former for "plastic tape dispensers," the latter for "sealing tape dispensers." In the respective applications, appellee alleged continuous use of the marks since May 16, 1945, a period of approximately three weeks. Appellant filed an opposition to each of the two applications for registration. Those are oppositions Nos. 24,665 and 24,666.

It was not questioned before the tribunals of the Patent Office that appellant's proof of prior use by several years was conclusive as to its marks "Pax," and "Pack's," together with the notation, "Pax-C-Ment."

Appellant during twenty years of use of "Pax" as a trade-mark has spent large sums of money advertising "Pax" products not only in nationally circulated magazines among dealers in the stationery trade but also in the distribution by direct mail on a nationwide basis of hundreds of thousands of circulars, folders, catalogues, and catalogue sheets to customers and potential customers. In 1944 and 1945, alone, appellant spent more than $50,000 for such advertising.

Without recounting the extent of appellee's advertising of "Pax" dry seal tape, or the amount expended therefor, the president of the Cofax Corporation stated that the product had been advertised in various magazines or periodicals circulated among stationers, the paper trade, and the packaging industry. When asked for what purpose the "Pax" dry seal tape was used, he replied: "A. It is used for mending paper; for protecting the edges of paper by binding around it; for adhering signs to windows; it can be used in place of surgical tape for holding bandages; because of its transparency it can be used in mending books, the type being visible through the tape; it can be used, and it is used, for electrical insulation; it is used for identifying lines in the assembly of radio sets and other electrical equipment."

Appellee's product is used generally and particularly in offices, libraries, hospitals, and in manufacturing plants for radio and electrical equipment. The tape can be used separately without a dispenser, but in most cases, a dispenser is used. The dispensers are of different sizes and types; either manually operated or automatic. The dispensers, among other things, bear the trademarks "Pax," "Paxite," or "Paxomat." The operation of the automatic type of dispenser, like appellant's automatic dispenser, is performed by depressing a lever.

When the Cofax Corporation decided in 1945 to use "Pax" as a trade-mark for the dry seal tapes, the president of the corporation had a search made among the records of the Patent Office. The search disclosed that between 1885 and 1945, "Pax" had been registered as a trade-mark for some seventeen different articles, including wheelbarrows, rugs, drills, saws, feed, fertilizers, medicine, etc.

Such collateral registrations were offered in evidence not to attack the validity of appellant's mark, but to show diversity in its use. It is thereby conceded that the term "Pax" is not merely descriptive of the goods of either party. Hence appellee is not unrestricted in its right to the use of the mark.

Furthermore, in making the search, it may be presumed appellee found appellant's involved registrations of record and went ahead with full knowledge of such registrations. Since appellee's marks were adopted without any explanation as to why they were adopted, it is fair to infer that the newcomer sought to profit by the confusion that would result. The record contains evidence of actual confusion in trade by reason of the concurrent use of the marks by the respective parties.

■ The goods of the respective parties are used by the same class of people, mostly, office workers, and sold in the same class of stores, mostly, stationery stores and paper houses, or the stationery department of department and drug stores. Assuming, without holding, that there was a difference in the channels through which the goods of the parties have been marketed, trade practices are subject to change and hence the class of purchasers, whether jobbers, retailers, or direct customers to whom the goods were sold, is not deemed to be a legally controlling factor. Celanese Corporation of America v. E. I. DuPont De Nemours & Co., 154 F.2d 143, 33 C.C.P.A., Patents, 857.

■ Appellant as the opposer to the registration of a trade-mark is entitled in such proceedings to rely not only upon its previously registered trade-marks but also upon trade-names and designs previously used on labels and in advertising literature in a manner analogous to a trade-mark use. John Wood Manufacturing Co. v. Servel, Inc., 77 F.2d 946, 22 C.C.P.A., Patents, 1370; Virginia Dare Extract Co., Inc., v. Adah Mae Dare, 70 F.2d 118, 21 C.C.P.A., Patents, 1086.

The sole issue before the court is whether the involved goods are goods of the same descriptive properties according to the provision therefor in section 5 of the statute.

■ Goods of the same descriptive properties, in the ordinary sense, are goods or products each of which is like the other; they are all things of the same kind. Goods of the same descriptive properties, in the statutory sense, include however not only the same kind of things but also things entirely different from one another. The distinction is not wholly logical, but purely legal, and the test to be applied, as a matter of law, when the question arises is not the likelihood of confusion as to the difference in the goods but the likelihood of confusion as to the difference in the ownership of two identical marks attached to the goods.

Adhesive cement for use in the repair of household articles legally had the same descriptive properties as lubricating oil in a case where the marks of the competing parties were identical and there was evidence of actual confusion in trade. Three In One Oil Co. v. St. Louis Rubber Cement Co., Inc., 87 F.2d 479, 24 C.C.P.A., Patents, 828. See also Elgin American Mfg. Co. v. Elizabeth Arden, Inc., 83 F.2d 687, 23 C.C.P.A., Patents, 1168.

■ Electric flash lights and storage batteries, in a legal sense, had the same descriptive properties as hardware consisting of locks and keys in the case of Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972. There Judge Learned Hand indicated that where the marks in a case are identical, such as those now before this court, the use of the mark by the newcomer is unlawful, unless the newcomer's use is so foreign to that of the prior owner as to insure him not only against confusion in trade but also against injury to his reputation, citing authorities.

■ The uncontroverted testimony of appellant as to actual confusion in trade as a result of the concurrent use of the identical mark by the respective parties, and the letters of record to the same effect, is not without significance on the question here in issue as to the likelihood of confusion as to the use of the respective marks involved. To say the least, there is substantial doubt on that point. Under the familiar rule such doubt should be resolved against appellee, the newcomer, inasmuch as it had an unlimited field to choose from in selecting completely different marks.

For the reasons hereinbefore stated, the respective decisions of the Commissioner of Patents appealed from are reversed.

Reversed.