39 C.C.P.A. (Patents)

## LIGHTNIN CHEMICAL CO. v. ROYAL HOME PRODUCTS, Inc.

### Patent Appeal No. 5896.

United States Court of Customs and Patent Appeals.

Argued May 7, 1952.

Decided June 24, 1952.

Thorton F. Holder, New York City (Ellsworth H. Mosher, Washington, D. C., of counsel), for appellant.

Frank Zugelter, Cincinnati, Ohio, for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal in a cancellation proceeding from a decision of the Commissioner of Patents, speaking through the Examiner-in-Chief, 89 USPQ 81, affirming the holding of the Examiner of Interferences sustaining appellee's petition to cancel a trade-mark of appellant which consists of the notation "Lightnin'" applied to "Bowl Cleaner" products.

In its petition for cancellation, appellee alleged that its trade-mark "Blitz" and appellant's trade-mark "Lightnin'." have the

same meaning; that "Lightnin'" is the English translation of the German word "Blitz"; and that the use of appellant's mark on goods of the same descriptive properties would cause confusion in trade as to the origin of the products.

In its answer, appellant denied the allegations of the petition to cancel, and as a separate and affirmative defense alleged that appellee is estopped by laches to institute and maintain this cancellation proceeding by reason of its delay in bringing such proceeding, and by the further reason that, during said delay, appellant has innocently conducted, advertised, and developed its business in its "Bowl Cleaner" to which its trade-mark "Lightnin'" is applied, whereby appellant would be damaged by the cancellation of its mark.

Both parties filed stipulated testimony.

There is no dispute as to the facts, which appear to be as follows:

Appellee is the owner of Registration No. 266,622 which was issued January 28, 1930 and renewed January 28, 1950 for the trade-mark "Blitz" for "Cleanser in Powder Form for General Household Purposes." Use of the trade-mark "Blitz" by appellee and its predecessors has been continuous since 1917. Appellee has advertised its "Blitz" product in catalogues and by issuing price lists. Its products have been distributed and sold by direct selling and through the customary merchandising channels comprising retailers. Its "Blitz" product has had nation-wide distribution.

Appellant is the owner of Registration No. 268,237 which was issued March 11, 1930 and republished July 6, 1948 for the trade-mark "Lightnin'" for "Bowl Cleaner." Use of the trade-mark "Lightnin'" by appellant and its predecessor has been continuous since 1928. During the period from 1928 to January 1, 1949, 2,528,903 packages of its "Bowl Cleaner," all bearing the trade-mark "Lightnin'," have been sold to wholesale grocers, syndicate or chain stores, and to janitor supply houses, all for resale. Appellant has sold its product on a nation-wide scale, and has built up valuable good will in its product and in its trade-mark "Lightnin'".

On August 12, 1948, over eighteen years subsequent to appellant's registration date, appellee filed its petition to cancel appellant's mark. However, there is no evidence whatsoever that appellee had any actual knowledge of appellant's mark prior to appellant's republication thereof on July 6, 1948, shortly before appellee filed its petition for cancellation.

The tribunals in the Patent Office held that "Lightnin'" is the English translation of the German word "Blitz," that there is no distinction, in a trade-mark sense, between an English word and its foreign equivalent, and that such words are therefore registrably indistinguishable; that the goods of the parties are so closely related in their nature and use that they are goods of the same descriptive properties; and that the concurrent use of the involved marks on the goods of the respective parties would therefore be likely to cause confusion or mistake or to deceive purchasers.

As to appellant's affirmative defense of laches, those tribunals were of the opinion that the facts of record were such that appellee could not be charged with actual notice of appellant's use of the mark "Lightnin'," and that appellee could not be charged with constructive notice of appellant's use of the mark "Lightnin'" by virtue of its registration of said mark in the Patent Office. Accordingly, they held that appellant's affirmative defense of laches could not be sustained.

Appellant has appealed from all the above rulings of the Patent Office tribunals, but counsel for appellant particularly urges upon us its affirmative defense of laches. It is our opinion that the defense of laches is determinative in this appeal, and we think the outcome of this case is controlled by our recent decision in Willson v. Graphol Products Co., Inc., 188 F.2d 498, 38 C.C.P.A., Patents, 1030. That case was decided April 10, 1951, shortly after the examiner-in-chief's decision was made in this case on April 5, 1951.

In Willson v. Graphol Products Co., Inc., supra, petitioner sought the cancellation of the trade-marks "Grafo" and "Grafolube." Petitioner was the owner of the

trade-mark "Graphol" which was registered January 27, 1925 and continuous use was stated to be since January 1922. Respondent was the owner of the marks "Grafo" and "Grafolube" which were registered September 4, 1934 and February 13, 1934, respectively. Continuous use of both marks by respondent was stated to be since August 1933. On May 4, 1944, almost ten years subsequent to respondent's registration dates, petitioner filed his petition for cancellation of both marks. Petitioner's first knowledge of respondent's trade-marks was gained by a search of the Patent Office trade-mark records in February 1944, only a short time before the cancellation proceedings were instituted.

In the Willson case, supra, we discussed at considerable length the defense of laches in a trade-mark cancellation proceeding. We considered, in particular, whether, since the passage of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., registration of a trade-mark in the Patent Office is a public record which constitutes such constructive notice that the defense of laches may be predicated on it. We there noted that prior to the Act of 1946 this court had held that section 13 of the Trade-Mark Act of 1905 precluded such a defense,[1] although our predecessor, the Court of Appeals of the District of Columbia, had apparently reached a conclusion opposite to our own.[2]

We pointed out the following in the Willson case, supra [188 F.2d 502]:

"The intent of the framers of the 1946 Trade-Mark Act in inserting section 19 authorizing the consideration of laches, as suggested by the hearings before the Committee on Patents of the House of Representatives, Hearings before Committee on Patents, Subcommittee on Trade-Marks, on H. R. 102, H.R. 5461, and S. 895, 77th Cong., 1st Sess. 153, 154 (1941), was

that this section would eliminate the hardship following literal interpretation of section 13 of the 1905 Act. Under that Act cancellation petitioners guilty of gross laches were allowed to cancel subsequent registrations regardless of how much hardship resulted. Procter & Gamble Co. v. J. L. Prescott Co., supra. [Cited in footnote 1 of this opinion.] Section 19 of the 1946 Act makes available the defense of laches and thus frees the registrant to present an equitable defense which, in the eyes of the committee, he should have been free to present at all times. Thus this section creates no new defense but removes a statutory impediment to consideration of an old defense which had always existed."

We concluded in that case that registrations under the 1905 Act are public records and that as such they constitute such constructive notice as will preclude a cancellation petitioner from pleading ignorance of the existence of a particular mark. Accordingly, although we concurred with the Patent Office tribunals that the marks and the goods there involved were so similar that confusion or mistake or deceit of purchasers was likely, we held that:

"It is our opinion that appellants' registration constituted constructive notice to appellee, and that appellee, having stood idly by for some ten years during which time appellants innocently conducted and built up their business until it was larger than that of appellee, is now precluded by laches from obtaining cancellation of appellants' trade-marks."

In our opinion, there are no material differences between the facts of this case and those of the Willson case, supra, although we again note that the delay in bringing the cancellation petition was 10 years in that case, whereas here the delay

1. Cluett, Peabody & Co., Inc. v. Hartogensis (Arrow Emblem Co., Inc., Substituted), 41 F.2d 94, 17 C.C.P.A., Patents, 1166; Procter & Gamble Co. v. J. L. Prescott Co., 77 F.2d 98, 22 C.C.P.A., Patents, 1173.

2. See Gerstendorfer Bros. v. United Supply Co., 54 App.D.C. 192, 26 F.2d 564, which we discussed in some detail in the Willson case, supra.

was 18 years. We therefore hold under the rule and authority of the Willson case, supra, that appellant's registration constituted constructive notice to appellee, and appellee, having stood idly by for over 18 years during which time appellant innocently conducted and built up its business and developed considerable good will in its trade-mark, is now precluded by laches from obtaining cancellation of appellant's mark.

We think it unnecessary to consider the question of whether the marks and goods here involved are so similar that confusion or mistake or deceit of purchasers is likely, since assuming, *arguendo*, that they are, this would not alter disposition of the case in view of our holding, as stated above, on appellant's affirmative defense of laches. See Willson v. Graphol Products Co., Inc., supra.

In view of the foregoing, the decision of the commissioner is *reversed*.

Reversed.

JACKSON, J., retired, recalled to participate herein. ·

O'CONNELL, Judge (dissenting).

The paramount national interest of the purchasing public, together with appellee's broadened private interest at home and abroad under the Act of 1946, requires the affirmance of the concurring decisions rendered by the tribunals of the Patent Office in this case, irrespective of the fact · that the successful appellee there has made no appearance here[1] to assert its established prior and substantive right[2] against a subsequent user of the identical mark[3] on goods concededly and essentially identical.

Laches may be imputed to one who had actual acknowledge of the infringement of his mark. Lantz Brothers Baking Co. v. Grandma Cake Co., etc., 161 F.2d 739, 34 C.C.P.A., Patents, 1073. Laches also may be imputed to one who had legal knowledge of facts which would lead a reasonable man to discover the infringement and stop it. As sometimes stated, legal knowledge is an essential element which must be proven by a party who seeks to charge another with laches. Standard Oil Co. of Colorado v. Standard Oil Co., 10 Cir., 72 F.2d 524, 527; 22 U.S.P.Q. 241; Ginsberg & Bros. Inc. v. Boston Maid, 85 U.S. P.Q. 430. Restatement of the Law of Torts, section 751; Robert, The New Trade-Mark Manual, pages 194–196.

Trade-mark rights, like others that rest in user, may be lost by laches, abandonment, or acquiescence, but the burden of the establishment of such a forfeiture must be specially pleaded and strictly proved by the party asserting it. E. I. Dupont De Nemours & Co. v. Celanese Corp. of America, 167 F.2d 484, 35 C.C.P.A., Patents, 1061, 3 A.L.R.2d 1213. In other words, one who relies upon laches as a ground of relief has the burden of its establishment and cannot be relieved thereof by the doctrine of constructive notice.

That doctrine as applied in Willson v. Graphol Products Co., Inc., 165 F.2d 446, 35 C.C.P.A., Patents, 857, is necessarily limited under section 22 of the Act of 1946, 15 U.S.C.A. § 1072, to the subsequent user of a previously registered trade-mark and cannot be applied for identical merchandise against the original registrant of an identical mark. As Robert, supra, correctly put it at pages 129–130:

"What does constructive notice mean, and what is its effect? It means simply that once a mark is registered on the principal register, everyone is charged with notice of the registrant's

1. Schering & Glatz, Inc. v. Sharpe & Dohme, Inc., 146 F.2d 1019, 32 C.C.P.A., Patents, 827.

2. S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176. See also Mishawaka Mfg. Co. v. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S. Ct. 357, 60 L.Ed. 713.

3. There is no distinction in a trade-mark sense between a foreign word and its English equivalent. Heintz v. American Tire Machinery Company, 140 F.2d 1013, 31 C.C.P.A.,Patents, 862; Nestle's Milk Prod., Inc. v. Baker Import Co., Inc., 182 F.2d 193, 37 C.C.P.A.,Patents, 1066; In re Maclin-Zimmer-McGill Tobacco Co., Inc., 49 App.D.C. 181, 262 F. 635.

claim of ownership of the mark. It means that no claim of rights may be asserted by another if he adopted and used the mark after the registration was granted. It means that adoption and use by another after the mark is registered is an unlawful use and cannot be justified by a claim of innocence, good faith, or lack of knowledge. In short, it means that the registrant is protected from "ambush" by a subsequent user.

"* * * It places squarely on the shoulders of all prospective users the duty and responsibility of searching the register in the Patent Office before adopting and using a mark. * * *

* * * * * *

"* * * No right to concurrent registration may be claimed if the use does not antedate the filing date of an application by another to register it;[4] and no claim of lawful use may be asserted if the use commenced after a registration of the mark was granted. In the latter case, the mark was not adopted "without knowledge" because the user is charged with notice by virtue of the registration."

Appellant stresses the importance of its assertion that no actual confusion over a period of twenty consecutive years' use of the competitive marks has been shown by appellee. The tribunals of the Patent Office have correctly held, however, that no significance may be attached to that point, and evidence of actual confusion in all such cases is not required. La Touraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115. Moreover, because the public interest is involved in the issuance of patents and trade-marks, appellant may not rely upon or acquire any legal rights against the original owner of an identical mark by reason of the erroneous subsequent registration to another of the same mark or an invalid one. In re St. Paul Hydraulic Hoist Co., etc., 177 F.2d 214, 37 C.C.P.A., Patents, 751.

The pertinent fact that appellee's mark and advertising from the outset have impressively displayed the notation "Lightnin" cleaner, appropriated by appellant, has been here ignored. Under the law, as this court has heretofore uniformly expressed it, advertising slogans, such as we have here, and such as "Good to the Last Drop," have been quarantined from appropriation and use by a subsequent user. Cheek-Neal Coffee Co. v. Hal Dick Mfg. Co., 40 F.2d 106, 17 C.C.P.A., Patents, 1103; G. H. Packwood Manufacturing Co. v. Cofax Corp., 183 F.2d 196, 37 C.C.P.A., Patents, 1195.

The appellant here is leaning on a weak crutch, and the able and current decisions of the tribunals of the Patent Office should be affirmed for the reasons therein stated.

4. Section 2(d).