47 CCPA

LOMA LINDA FOOD COMPANY (Pacific Union Association of Seventh-Day Adventists, Assignee, Substituted)

v.

THOMSON & TAYLOR SPICE CO. (by change of name—A B C Sales Co.).

Patent Appeal No. 6546.

United States Court of Customs and Patent Appeals.

June 14, 1960.

Munson H. Lane, Washington, D. C. (Albert J. Fihe, Burbank, Cal., of counsel), for appellant.

Arthur Wm. Nelson, Olson, Mecklenburger, von Holst, Pendleton & Neuman, Russell L. Law, Washington, D. C. (Arthur A. Olson, Jr., Chicago, Ill., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges and WILLIAM H. KIRKPATRICK, Judge.[1]

KIRKPATRICK, Judge.

Acting upon the petition of the appellee, Thomson & Taylor Spice Co., owner of the unregistered trademark "Breakfast Cup" for coffee, the Examiner of Interferences recommended the cancellation of the registration of the trademark "Breakfast Cup For all the family," issued to the appellant's predecessor, Loma Linda Food Company, for a coffee substitute. The Assistant Commissioner affirmed the examiner's action in granting the petition to cancel and this appeal by the registrant followed.

Although the products sold under the respective trademarks are different, being in the one case coffee and in the other a table beverage made from soy beans, figs and grains, it is conceded, as indeed it must be, that the marks are confusingly similar.

The ground for cancellation taken in the decision of the Assistant Commissioner was that the registrant did not have exclusive use of the mark at or since the date of the application for its registration, as required by Section 2 of the Act of March 19, 1920, 15 U.S.C.A. § 1052, under which act the mark was registered. The petitioner, by evidence which fully supports the Commissioner's finding, showed that it had been using the trademark on a very considerable scale at and after the critical time. The evidence consisted not only of the testimony of witnesses but also of records of unquestionable authenticity. The petitioner's proof was met by a fusillade of objections, which were pressed before this court, but the witnesses were testifying from personal knowledge and the records produced were clearly admissible under the Business Records Act, 28 U.S. C. § 1732.

The Assistant Commissioner considered the issue of laches on the part of the petitioner and held the doctrine inapplicable because the proofs failed to show either knowledge of the registration by

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge*

*O'CONNELL*, pursuant to provisions of Section 294 (d), Title 28 U.S.C.

the petitioner or reliance by the registrant upon the petitioner's delay in taking action. The registrant also attacked the petitioner's title to its mark—a question which was decided adversely to the registrant by the examiner. It was not expressly dealt with by the Assistant Commissioner but was argued before this court.

The chronology is as follows: The petitioner began to use its trademark for coffee as early as 1919, the registrant for its coffee substitute sometime between 1932 and 1934. The registrant's application was filed on May 16, 1938, and the registration issued, as noted above, under the Act of 1920, on June 20, 1939. In 1955, the petitioner filed an application to register its trademark and on September 14, 1955, the examiner cited the registrant's registration as a basis for refusing the application. The petitioner, thereafter on March 13, 1956, instituted this proceeding to cancel the registration.

The issue of the petitioner's title can be easily disposed of. The trademark was first used by a corporation named The Warfield Company. Thereafter, as found by the examiner, the right to use it passed to the petitioner by means of several transfers of the business in which it was used and changes of name of the companies involved.

■ The link in the petitioner's chain of title which the registrant argues was not proved was the transfer of the trademark on June 25, 1952, on which date The Warfield Company sold its coffee business to the Coffee Corporation of America. That sale was accomplished by means of a written agreement. The point made by the registrant is that this agreement does not specifically mention the trademark. However, it conveyed along with the business and tangible property pertaining to it "All good will in connection with coffee," and attached to it there were schedules containing inventories of coffee cans and bags in which there appeared under the heading "One Pound Coffee Cans," the item "Breakfast Cup at 5½ Cents Each," and on the next page,

"1# House Coffee Bags," under which was listed "Breakfast Cup (Steel Cut), 21,000 * * * Breakfast Cup 10½ (steel Cut), 91,000."

Acting under the agreement, the Coffee Corporation of America, a predecessor of the petitioner, thus took over more than 112,000 containers, bags and cans, marked with the "Breakfast Cup" mark, after which The Warfield Company discontinued its coffee business and the Coffee Corporation, making use of the lists of customers and the trademark, proceeded to engage in the sale of coffee on a very substantial scale.

The agreement itself, without need to consider the conduct of the parties acting under it, was quite sufficient to evidence and to effectuate the intention of the parties to transfer the trademark. See Lantz Brothers Baking Co. v. Grandma Cake Co. and Grandma Cookie Co., Etc., 161 F.2d 739, 743, 34 CCPA 1073, in which this court said "it is too well established to require citation of authorities that the good will of a business includes all trade-marks used in the conduct of such business * * *."

■ Coming now to the issue of laches, we do not read the decision of the Assistant Commissioner as holding that Section 2 of the Act of 1920 makes cancellation mandatory in every case in which it appears that the registrant was not entitled to the exclusive use of the mark at the time of his application, regardless of the conduct of the party seeking cancellation. The defense of laches is clearly available to the registrant by virtue of 15 U.S.C.A. § 1069.

It is true that from 1939 when the registrant's trademark was registered until 1956, or a period of almost 17 years, the petitioner did nothing to assert its prior right to the mark. It is also true that during that period the registrant, making use of the mark, built up a very considerable business for its coffee substitute.

However, " 'Laches consists of two elements, inexcusable delay in instituting suit and prejudice resulting to the de-

fendant from such delay. Its existence depends upon the equities of the case, and not merely upon the lapse of time.' United States v. Alex Dussel Iron Works, Inc., 5 Cir., 1929, 31 F.2d 535, 536." Loverich v. Warner, 3 Cir., 118 F.2d 690, 693.

One of the grounds upon which the Assistant Commissioner declined to convict the petitioner of laches was that the proofs failed to show any "reliance by respondent on petitioner's failure to take earlier action." Such reliance is necessary to an estoppel but unnecessary to the defense of laches. Prejudice may result without any reliance upon the other party's inaction as, for example, through death of witnesses or loss or destruction of records. It may be taken as established that the registrant did not develop its business relying upon the petitioner's inaction, inasmuch as the evidence shows that the registrant had no knowledge that the latter's trademark existed. The question whether the element of prejudice can be found from all the circumstances of this case was not decided by the Assistant Commissioner. It need not be decided here, but for the purpose of this decision, it may be assumed that prejudice existed.

The other necessary element of laches is that the delay must be inexcusable. Of course, if the party against whom the defense is raised had no knowledge that his rights were being invaded and was not chargeable with such knowledge, it is a good excuse. Thus, assuming prejudice, the question whether this petitioner had knowledge of the registration or is chargeable with such knowledge becomes the point upon which the issue of laches turns.

The appellant argues that the petitioner is charged with constructive notice of the registrant's claim to the mark from the date of its registration on June 20, 1939. However, this registration was under the Act of 1920, and that act contains no provision making registration constructive notice. In the absence of a statutory provision making recordation constructive notice, the fact that an instrument or registration is entered upon a public record has no such effect. "The matter of constructive notice from the record is entirely a creation of statute, and no record will operate to give constructive notice unless such effect has been given to it by some statutory provision." 66 C.J.S. Notice § 13c.

While Sections 22 and 46(b) of the Lanham Act provide that a registration on the principal register as well as a registration under the Act of 1905 shall be constructive notice of the registrant's claim of ownership thereof, Section 26 expressly withholds from registration on the supplemental register the benefits accorded by Section 22. It is evident, therefore, that the Lanham Act does not contemplate that either registrations on the supplemental register or those under the Act of 1920 shall constitute constructive notice of the registrant's claim of ownership. Willson et al. v. Graphol Products Co., 188 F.2d 498, 38 CCPA 1030, was concerned with a registration under the Act of 1905 and hence is not in point here. It follows that the petitioner has not had constructive notice of the registration.

As to the petitioner's actual knowledge of the registrant's use of its trademark, there is no direct evidence that the petitioner ever had such notice. However, actual knowledge may be found from circumstantial evidence. If the evidence shows a state of facts in which it is inconceivable that the party charged with laches in a trademark case could have been unaware of the opposing party's use of the mark, he cannot be heard to say that his delay is excusable because of lack of knowledge. See Procter & Gamble Co. v. J. L. Prescott Co., 3 Cir., 102 F.2d 773, 780. The registrant's chief effort was to produce circumstantial evidence which would convince the office that the petitioner must have had actual knowledge of the registrant's use, if not the registration, of the trademark. The registrant's proof did not convince the examiner or the Assistant Commissioner, and we agree with the latter that it falls short of establishing such knowledge.

The registrant called a number of its executives and employees whose testimony established beyond doubt that it carried on a large business in its coffee substitute under the name "Breakfast Cup, For all the family," or more usually, "Breakfast Cup," throughout the Pacific states, together with Arizona, New Mexico, Texas, Utah, Nevada, and Colorado during a number of years beginning at least as early as 1932 and that the product was pushed in that territory by distribution of booklets and samples and by newspaper advertising and broadcasts on the Pacific coast.

The only evidence as to the registrant's promotional activities in selling its coffee substitute east of the Mississippi consists of a 1941 price list of a jobber in New York City listing "Breakfast Cup." There was evidence that the registrant had a factory and a sales force at Mount Vernon, Ohio, but the registrant manufactured and sold a large number of vegetable food products and substitutes of various kinds under different trademarks and there is no evidence that its Ohio factory produced any "Breakfast Cup" coffee substitute or that the sales force centered in that state sold any. The testimony of one witness "We have them (jobbers) all over the country" and of another, "I don't believe there is a state in the Union that we haven't shipped ("Breakfast Cup") to" fails to give any hint as to quantities, dates or volume and is entirely too vague to form a basis for a finding of knowledge on the part of the petitioner.

The evidence further shows that the registrant has promoted its products since about 1932. It has spent between $6,000 and $10,000 a year in advertising (not a very large amount for an allegedly nationally promoted product) practically all of which, so far as appears from this record, was directed to the west coast and the Rocky Mountain states.

The record does not convince us that a firm selling coffee, with headquarters in Chicago, which deals primarily in the State of Illinois and ten or twelve of the adjacent states must have been aware of the use of "Breakfast Cup" by the registrant.

We agree with the Assistant Commissioner that the registrant did not have the exclusive use of the trademark during the period from May 16, 1937, to May 16, 1938, when its application for registration was filed. Such registration will be cancelled if the essential element of exclusive use is lacking, unless some equitable defense can be successfully asserted. In this case no such defense has been established and the petition to cancel the registration will be granted.

Affirmed.